## M. R. MUCKLE ET AL. v. ALBERT H. MOORE.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
NO. 3 OF PHILADELPHIA COUNTY.

Argued April 1, 1890—Decided May 12, 1890.

In an action to recover for an electric light plant furnished and put up under
a parol contract, the testimony of the parties as to whether certain ap-
pliances were chargeable as extras ordered by the defendant or were
included within the contract, being contradictory, the terms and condi-
tions of the contract were for the jury, and to charge so as practically
to withdraw these matters of fact from their determination was error.

Before STERRETT, GREEN, CLARK, WILLIAMS and MITCH-
ELL, JJ.

No. 165 January Term 1890, Sup. Ct.; court below, No. 403
March Term 1889, C. P. No. 3.

On April 20, 1889, M. R. Muckle, Jr., and others trading as
M. R. Muckle, Jr., & Co., brought assumpsit against Albert
H. Moore. Issue.

At the trial on October 7, 1889, the plaintiffs' claim, as sup-
ported by their testimony, was a bill for a boiler, automatic en-
gine, etc., etc., and an electric light plant, furnished and put
up by them for the defendant. The contention in the Supreme
Court related entirely to the electric light plant, as to which
the plaintiffs introduced testimony in proof of a parol contract
to supply the defendant with an electric light plant for $600,
and the value of certain articles as extras therefor, specially
ordered by the defendant and supplied by the plaintiffs. The
defendant introduced testimony in support of his claim that he
was to have the plant complete for $600, and was to pay in
addition only for the wire and the time of the men in wiring
the plant, and that plaintiffs had charged him for many articles
which should have been included in the complete plant pro
vided for in the contract. The disputed questions of fact suf-
ficiently appear in the opinion of the Supreme Court.

The letter of plaintiffs to defendant, dated January 21, 1889,
referred to in the opinion, was as follows:

"Dear Sir: We have your verbal order of this day for a direct current incandescent electric lighting outfit of the Westinghouse Electric Company's make, delivered f. o. b. cars, Pittsburgh, Pennsylvania, for the sum of six hundred dollars ($600.00).

"The plant to consist of one dynamo with a maximum capacity of 100 16-candle-power lamps; dynamo to be complete with one rheostat, to bring lamps to the proper candle power; tension base; one volt-meter or candle-power indicator; 28 16-candle-power lamps; 36 50-candle-power lamps, and 64 keyed sockets.

"We further understand that you are to locate the lamps in your dwelling and buildings; and that we are to do the wiring up of this work, charging for the time of men, material and expenses.

"We will have this apparatus shipped forward at once, and our wiremen will meet you next Thursday morning, on the nine o'clock train, to go to Colmar to have you locate the lights."

At the close of the testimony, the court charged the jury in part as follows:

[The defendant is entitled simply to the dynamo, a machine for manufacturing electricity, and the number of lights as he saw them at the time he went into the establishment of the plaintiffs. If they were without reflectors, then he had no right to have reflectors. If the lights that he saw were without any of the other things that were put about his lights, it is his duty to pay for them, even upon his own version of the contract.] [1]

[Again, if you are satisfied that his version of the contract is correct, he should pay for all expenses of affixing those lights; that is, whatever expenses attended putting them in and about the place. All those expenses should be paid by him. In other words, he is entitled to nothing, under his version of the contract, but the dynamo and the simple lights as he saw them, and he is not entitled to have them put in any place at the expense of the plaintiffs.] [2] . . . . .

—The jury returned a verdict for the plaintiffs for $3,181.03. A rule for a new trial having been discharged, the defendant took this appeal, assigning for error: 1, 2. The portions of the charge embraced in [ ] [1] [2]

Opinion of the Court.

*Mr. Leoni Mellick* (with him *Mr. Sheldon Potter*), for the appellant.

*Mr. Augustus J. Rudderow*, for the appellees.

OPINION, MR. JUSTICE CLARK:

There is no serious dispute in this case as to the contract for the engine and boiler; the defendant said that Mr. Muckle had quoted the list prices to him, and there would be a discount off; but, as there is no question raised in the assignments of error as to this, we assume that the instruction of the court on that branch of the case was satisfactory.

It appears, however, that after the bargaining for the engine and boiler was over, the parties discussed the cost of an electric plant for the defendant's farm at Colmar. In reference to this, Mr. Moore testifies as follows:

"After the boiler and engine had been ordered, we talked about the electric plant, and so on, and I said to Mr. Muckle, 'What would it cost to light this place with electricity?' He said he could not tell, as long as it would require so much wire, and so on; that it would be necessary to make an estimate; to go there and see about where we would want the lamps and wire, and so on; or else he could make an estimate for the entire plant, and the wire and the time to be extra. I thought, to save time and as long as I was there, I would give an order to Mr. Muckle, so I said, 'You sit down at the desk, and give me some idea as to what this is going to cost, this plant.' Mr. Muckle sat down at his desk, and did some figuring, which I did not see at the time, and, after figuring a few minutes, looked up and said, 'This will cost you $650.' I studied a few moments, and said, 'Can't you make it $600?' He said, after a few moments, 'Well, yes; we will make it $600.' Then I said, 'Mr. Muckle, if that is understood, this plant is to cost me $600. As long as you can't give me any idea as to what the wire or time will cost, we will make that extra. 'Now,' I said, 'I am to pay you $600 for the plant, and the wire and time shall be extra?' And he said, 'that was understood.'"

He further states that he gave Mr. Muckle the number of lamps, previous to making his calculation, and the agreement

was for $600, and the wire and time; that, on the next day, he received a memorandum account of what constituted this $600, which he had not seen at the time it was made, and which he supposed covered everything embraced in their contract. Mr. Moore admits that he was consulted by the hands as to the location of the lights, switches, etc.; but he says that, as the contract was for the plant, and as he was compelled to pay for the amount of wire consumed and time taken, it was his right, of course, to have the lamps and switches located where he chose; he states that he gave no further order for material than he believed to be in his contract; that he was wholly ignorant of what was embraced in the electric plant, and, therefore, when he received the letter of the 21st of January, 1889, he supposed it to be in accordance with the contract, and he gave it little consideration.

It is admitted that he was contradicted in every particular. The plaintiffs' version of the transaction was that the electric plant consisted of one dynamo, with the maximum capacity of 100 16-candle-power lamps; dynamo to be complete, with one rheostat to bring lamps to proper candle power; tension base; one volt-meter, or candle-power indicator; 28 16-candle-power lamps; 36 50-candle-power lamps; and 64 keyed sockets, as specified in the letter of the 21st of January, 1889; and that the "wiring up" of this work included the rosettes, brackets, insulators, reflectors, etc., charged in the bill. Mr. Moore meets this with an emphatic denial; he says he was to pay $600 for the plant, and for the wire and time. If "wiring up" were the words employed at the time, and they were intended to have any special signification, that fact should have been made known to Moore. Ordinarily, the wire or wiring would not be taken to include reflectors, brackets, insulators, expenses, etc. The terms of the contract are to be interpreted according to the common understanding at the time, unless some particular or special meaning is shown to have been in the minds of the parties. The conflict in the evidence and the veracity of the witnesses were matters peculiarly within the province of the jury. The contract was not in writing. The letter of the 21st of January was merely the plaintiffs' statement of it afterwards. The defendant says it is not a true statement, and that he did not object to it at the time, because he did not know what

was embraced in an electric plant, and supposed the statement to be in accordance with the original contract. What the contract was, its terms and conditions, should have been submitted to the jury. The learned judge instructed the jury as follows:

" The defendant is entitled simply to a dynamo and machine for manufacturing electricity, and the number of lights as he saw them at the time he went into the establishment of the plaintiffs. If they were without reflectors, then he had no right to have reflectors. If the lights that he saw were without any of the other things that were put about his lights, it was his duty to pay for them, even upon his own version of the contract. Again: if you are satisfied that his version of the contract is correct, he should pay for all expenses of fixing those lines, that is, whatever expenses attended putting them in and about the place. All those expenses should be paid by him. In other words, he is entitled to nothing, under his version of the contract, but the dynamo and the simple lights as he saw them, and he is not entitled to have them put in any place at the expense of the plaintiffs."

This, we think, was a practical withdrawal of the matters of fact in issue from the jury. If the defendant's version of the contract is the correct one, he was entitled to have an electric plant, adapted to the uses and purposes contemplated, on his farm at Colmar, with the number of lights designated, and with all the fixtures and appliances reasonably necessary for its successful operation, for which he was to pay $600 and for the wire and time in addition. If this was the contract, it is fair to assume, in the absence of any special and additional order on the part of the defendant, that the fixtures and appliances placed there were furnished under the contract.

The judgment is reversed, and a venire facias de novo awarded.